IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50294

_____


FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate
Capacity

                    Plaintiff - Appellant,

v.

CERTAIN UNDERWRITERS OF LLOYDS OF LONDON PURSUANT TO
AND UNDER BANKERS BLANKET BOND POLICY NO.
834/FB8808216; ANGLO AMERICAN INSURANCE COMPANY,
LIMITED; ASSICURIZIONI GENERALI AS PER H.S. WEAVERS
AGENCIES LTD; BRITISH LAW INSURANCE COMPANY LTD;
CAMPAGNIE EUROPEENE D'ASSURANCES INDUSTRIELLES S.A.;
COPENHAGEN REINSURANCE CO., LTD

                    Defendants - Appellees
_____

Appeal from the United States District Court
for the Western District of Texas
(A-93-CA-489)
_____

March 28, 1996
Before KING, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

    The Federal Deposit Insurance Corporation ("FDIC") appeals

the take nothing judgment rendered against it by the district

court in an action against certain underwriters of Lloyds of

_____

    [*] Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

London (collectively "Underwriters") for breach of a fidelity bond agreement. For the reasons assigned, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTS

The FDIC brought suit against Underwriters as assignee of a claim under a financial institution bond issued by Underwriters to Texas American Bancshares, Inc. ("TAB") and several of its subsidiaries, including TAB-Austin, TAB-Ft. Worth, TAB-Fredericksburg, and TAB-Temple. The bond at issue contains a "Revised Fidelity Insuring Agreement" that limits insurance coverage to "[l]oss resulting solely and directly from one or more dishonest or fraudulent acts of an employee . . . ."

Two former employees of TAB-Austin, Donald R. Cockerham ("Cockerham") and Lester L. Duncan ("Duncan"), concealed their financial interests in two real estate ventures to which TAB-Austin and the other TAB subsidiaries lent funds. The concealment of their interests constituted a violation of a federal banking regulation known as Regulation O. 12 C.F.R. Part 215.

Each of the participating TAB subsidiaries made an independent evaluation of the creditworthiness of the loan principals. A former president of TAB-Ft. Worth testified at trial that no effort was made to determine the parties for whom the principal on the loan in which TAB-Ft. Worth participated was

acting as trustee, and that it was common to make loans without such inquiries.  However, representatives of the TAB subsidiaries testified that they would not have extended the loans if they had known of Cockerham's and Duncan's concealed financial interests.

Plummeting real estate prices prevented the principals from developing or reselling the real estate purchased with the loan proceeds, and the principals defaulted on the loans.  All of the loans were secured by the real estate, which was deeded on foreclosure to TAB-Austin, individually, and as representative of the other TAB subsidiaries.

On September 8, 1988, TAB sent written notice of a possible loss to Underwriters.  A Proof of Loss was submitted on May 5, 1989 in connection with the fraudulent loans.  On July 20, the Office of Comptroller of the Currency appointed the FDIC as receiver for the TAB subsidiaries.  When the Underwriters declined to pay the claim, the FDIC commenced this action.

B.  **PROCEDURAL BACKGROUND**

The FDIC brought suit against Underwriters for breach of contract on August 17, 1993.  The case was tried before a jury from February 27 to March 2, 1995.  The district court gave the following jury instruction, as requested by Underwriters:

> Lloyds of London contends that the dishonest or fraudulent acts of Cockerham and/or Duncan were not the sole and direct cause of loss and that the FDIC, therefore, is not entitled to recover on the Bond.  The FDIC has the

burden of proof that the acts of Cockerham and/or Duncan were the sole and direct cause of the loss.

Sole cause means there is no other cause.

A loss is caused solely and directly from dishonest or fraudulent acts where the dishonest or fraudulent acts are the only cause of the loss. If an act is the sole cause, there can be no other cause. If the loss results from more than one cause, then no single cause is the sole cause.

A "but-for" test has no applicability where coverage is limited to losses caused solely by a particular act. Mere proof that a loss would not have occurred but for a certain act is not sufficient.

The FDIC had submitted written objections to the Underwriters' proposed jury instructions prior to the charge of the jury, arguing that "sole cause" means that there is no other concurrent proximate cause.

The district court submitted the case to the jury on a special verdict form. Based on the finding of the jury that the misconduct of Cockerham and Duncan was not the sole cause of the loss of the TAB banks, the district court entered judgment in favor of Underwriters on March 16, 1995.

## II. ANALYSIS

The FDIC contends that the jury instruction regarding sole cause was erroneous because the jury should have been instructed that "sole cause" means "sole proximate cause." We need not reach the issue of the propriety of the jury instruction because any error in the instruction "could not have affected the outcome of the case," and was thus harmless. <u>Bender v. Brumley</u>, 1 F.3d

271, 276-77 (5th Cir. 1993) (internal quotations and citation omitted).

The FDIC predicates its argument on the notion that, as a matter of law, a bank's loss from a fraudulent loan occurs at the time of the disbursement of funds rather than at the time of default on the loan. Under such a legal conclusion, events that occurred subsequent to disbursement of the loan funds, such as decline in the real estate market, could not have been causes of the loss because they occurred after the loss.

The FDIC thus reasons that the only possible causes that the jury could have considered in reaching its conclusion that employee dishonesty was not the sole cause of the loss of the TAB banks were (1) employee dishonesty, and (2) the decisions of the TAB subsidiaries to make the loans. The FDIC urges that the jury could have concluded that (1) employee dishonesty was a proximate cause of the loss and (2) the TAB subsidiaries' credit decisions were causes of the loss, but not <u>proximate</u> causes of the loss. If the jury reached this conclusion, then the outcome of the trial would have been different if the definition of "sole cause" proffered by the FDIC had been included in the jury instruction. Under the FDIC's definition, employee dishonesty would have been the "sole proximate cause" of the loss, and thus the "sole cause" of the loss.

The FDIC's analysis is problematic because it is predicated on a legal argument not advanced at trial: namely, that a bank's

loss in connection with a fraudulent loan occurs at the time of disbursement of the loan funds rather than at the time of default. The FDIC made no request for a jury instruction that loss in connection with the loans at issue in the case occurred at the time that the loan funds were disbursed.[1] Additionally, neither the FDIC's proposed jury instruction on sole cause nor its objection to Underwriters' proposed instruction on sole cause contained any analysis or citation of legal authority relating to the timing of the loss. The FDIC merely argued in closing that the loss occurred at the time of disbursement. Thus, the FDIC consented to the jury's consideration of other factors, such as decline in the real estate market, as potential causes of the loss.

Because the FDIC did not request that the district court instruct the jury that, as a matter of law, loss occurs at the time of loan funding, it has not preserved this argument for appeal. This court will not consider on appeal matters not presented to the trial court. Quenzer v. United States (In re Quenzer), 19 F.3d 163, 165 (5th Cir. 1993). The FDIC is essentially asking this court to view the jury instruction in

---

[1] In its written objections to Underwriters' proposed jury instructions, the FDIC advanced the argument that loss occurs at the time of loan disbursement and cited supporting authority in an objection to a requested jury instruction that the FDIC, as assignee, was limited in its recovery to losses suffered by the assignors of the contract claim. However, no legal argument concerning the timing of loss was ever advanced by the FDIC in connection with jury instructions relating to causation.

6

this case through a legal framework not advanced at trial, and we decline to do so.

At oral argument before this court, counsel for the FDIC conceded that the FDIC's appeal would be unmeritorious in the absence of a recognition by this court that loss resulting from a fraudulent loan occurs at the time that loan funds are disbursed.[2]  Logically implicit in this concession is a concession that, if the loss on the fraudulent loans occurred at the time of default, then decline in the real estate market was a proximate cause of the loss.  This is the only conclusion that would necessarily render any error in the jury instruction on sole cause harmless, and thus render the FDIC's appeal unmeritorious.  Employee dishonesty could not be the sole proximate cause of the loan loss, as required by the fidelity bond, if decline in the real estate market was a proximate cause of the loss.  Accordingly, the FDIC has conceded that the jury would have reached the same result with the FDIC's requested

_____

[2]  The following exchange took place between the court and counsel for the FDIC during oral argument:

THE COURT:   That is why it is that it is so important to your cause that you establish that the loss occurred at the date that the loan was funded.

COUNSEL:     That's right, your honor.

THE COURT:   Without that . . . you don't have an argument.

COUNSEL:     We really don't, judge, and I will concede that.  We have to show that the loss occurred at funding.

7

instruction on the meaning of "sole cause" that it did with the instruction given at trial.

### III.  CONCLUSION

Because of the FDIC's failure to preserve the question of whether a loss relating to a fraudulent loan occurs at the time of the disbursement of the funds and because of its concession that this issue is dispositive of its appeal, we AFFIRM.